Mark Crabtree, OSB #015070
mark.crabtree@jacksonlewis.com
Leslie Boro, OSB #173662
leslie.boro@jacksonlewis.com
JACKSON LEWIS P.C.
200 SW Market St., Ste. 540
Portland, Oregon 97201
Telephone: (503) 229-0404
Facsimile: (503) 229-0405
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JULIA PIRANI,<br><br>Plaintiff,<br><br>v.<br><br>CAREOREGON INC.,<br><br>Defendant. | Case No.:  3:24-cv-01495-SB<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

**CERTIFICATE REQUIRED BY L.R. 7.1**

Pursuant to Local Rules 7-1(a)(1), the undersigned counsel certifies that Defendant's counsel conferred with counsel for Plaintiff regarding the issues raised by this motion and no agreement could be reached without intervention of this Court.

Page 1 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

**MOTION**

Defendant CareOregon Inc. ("CareOregon" or the "Company"), by and through undersigned counsel, hereby moves for summary judgment in its favor and against Plaintiff Julia Pirani ("Pirani" or "Plaintiff"). This motion is brought pursuant to Federal Rules of Civil Procedure 56 and supported by the following memorandum of law, along with the Declarations of Nora Leibowitz, Eric Hunter, James Mason, Meridith Green, and Mark Crabtree.

Summary judgment is appropriate because no genuine issue of material fact exists, and Defendant is thus entitled to judgment as a matter of law.

**MEMORANDUM OF LAW**

## I.        INTRODUCTION

Plaintiff had a personal falling out with Pirani's supervisor, Dr. James Mason. In response, Plaintiff distanced herself from Dr. Mason, then blamed Dr. Mason for being a poor manager. Plaintiff used Pirani's dispute with Dr. Mason to insist that CareOregon move Pirani to a different supervisor and to demand CareOregon devote more attention to Pirani and Pirani's work. CareOregon, in fact, transferred Pirani to a new supervisor. However, the new supervisor, Nora Leibowitz ("Leibowitz"), analyzed Plaintiff's role in the organization, determined that Plaintiff's particular role was unnecessary, and recommended a reorganization of Plaintiff's duties that ultimately resulted in eliminating Plaintiff's job.

Against that backdrop, Plaintiff alleges that Dr. Mason discriminated against Pirani and harassed Pirani based on a variety of protected characteristics (including race, ethnicity, color, sex, gender, and sexual orientation). The undisputed evidence, however, does not support Plaintiff's allegations. First, Plaintiff's discrimination claim is premised on a series of perceived slights (e.g.,

Page 2 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

"micromanagement") that, individually or collectively, do not rise to the level of an adverse employment action. Second, Plaintiff's harassment and hostile work environment claims fail based on a complete absence of supporting facts. Indeed, Plaintiff admitted in Plaintiff's deposition that Dr. Mason never once said anything derogatory about Pirani's protected class status.

Plaintiff's retaliation claim fairs no better. First, Plaintiff's internal report concerning Pirani's personal dispute with Dr. Mason does not amount to protected conduct and, thus, does not give rise to a viable claim. Second, even if Plaintiff's report could be considered protected conduct, there is zero evidence from which to conclude that Leibowitz, the manager responsible for recommending the elimination of Plaintiff's position, had any knowledge about Plaintiff's alleged protected conduct. Quite simply, based on the undisputed facts in the record, Plaintiff's retaliation claim should be dismissed as a matter of law.

## II.    UNDISPUTED MATERIAL FACTS

### A. Plaintiff and Dr. Mason Bond Over Shared Interests in Advancing DEI

Beginning in 2011, CareOregon employed Plaintiff in a variety of roles. In May 2018, Plaintiff's former CareOregon supervisor, Erin Fair Taylor, promoted Plaintiff to a newly created position entitled Vice President of Strategic Business Initiatives. Deposition of Julia Pirani ("Pirani Dep.") at 25:16-19.[1] Plaintiff was generally responsible for developing and implementing new care coordination programs with Oregon's tribal entities (hereinafter the "Tribal" work). *Id. at* 27:11-21. Separately, and quite distinctly, Pirani was responsible for ensuring Medicaid-eligible

---

[1] Excerpts from the deposition of Pirani are attached hereto as Exhibit 1 to the Declaration of Mark Crabtree filed herewith.

Page 3 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Oregonians had access to non-emergency medical transportation ("NEMT") under a mandate from the Oregon Health Authority. *Id.* at 31:8-12, 37:16-19. Between 2021 and 2023, Pirani's role comprised thought leadership with respect to delivering discreet Medicaid coverage and benefits to two unique, but unaffiliated groups. Declaration of Eric Hunter ("Hunter Decl.") ¶ 4.

In 2021, Ms. Taylor left CareOregon. Declaration of Meridith Green ("Green Decl.") ¶ 2. Thereafter, at Plaintiff's request, CareOregon assigned Dr. James Mason to supervise Plaintiff's work. Pirani Dep. at 44:6-7. Dr. Mason was, at the time, a relatively new hire. CareOregon hired Dr. Mason in 2021 as the Chief Officer overseeing Equity, Diversity, and Inclusion ("EDI"), as well as Human Resources ("HR"). Dr. Mason's primary responsibility was designing and implementing diversity goals for the organization. Declaration of James Mason ("Mason Decl.") ¶ 2.

In or around June 2021, Pirani volunteered to work directly with Dr. Mason on EDI initiatives, as Pirani was "excited about the EDI work." Pirani Dep. at 45:7-9, Ex. 6; 48:4-10; 49:21-25. Pirani was also not particularly busy with Pirani's work involving Tribal and NEMT. *See* Pirani Dep. at 74:19-20, Ex. 10. Over the ensuing months, Plaintiff and Dr. Mason were "enjoying [their] connection together in that work." *Id.* at 49:23-24. According to Plaintiff, Dr. Mason gave Pirani a lot of his time; he "reflected care for me and my family"; and "I felt seen and cared for." Pirani, in Pirani's own words, spent "3-4 hours a week as [Dr. Mason's] personal friend/confidant." *Id.at* 83:4-6, Ex. 11.

## B. Plaintiff Distances Herself from Dr. Mason, then Complains about His Effectiveness as a Supervisor

As the Chief Officer responsible for overseeing the work managed by Pirani and Pirani's team, Dr. Mason was responsible for speaking on behalf of Tribal and NEMT during planning and

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

budget meetings with CareOregon's Chief Executive Officer, Eric Hunter ("Hunter").  Hunter Decl. ¶ 3.  Despite their initial good working relationship, Pirani came to believe that Dr. Mason was not doing a sufficient job advocating on behalf of Tribal and NEMT when speaking with Hunter.  Pirani Dep. at 55:15-56:1.  Plaintiff felt that Dr. Mason "did not escalate any of the needs of my unit in a C-suite setting.  He did not talk about my books of business.  He did not talk about my teams' accomplishments or my accomplishments.  He did not promote the activities of his own people."  *Id.* at 65:18-24.  Pirani also felt Dr. Mason failed to ask enough questions, failed to understand the outcomes of business decisions, and seemed disinterested in advocacy.  *Id.* at 70:23-71:6.

Because Pirani felt Dr. Mason was not doing a sufficient job advocating on Pirani's behalf for the programs that Pirani oversaw, Pirani distanced herself from him and started spending less time with him.  *Id.* at 56:9-10.  In Pirani's view, their relationship became strained, *id.* at 56:2-4, which, in turn, made Dr. Mason uncomfortable.  *Id.* at 56:9-10.  Pirani felt that Dr. Mason did not like that Pirani was divesting from their relationship.  *Id.* at 81:5-10.

**C.  Dr. Mason Asks About Departmental Budget Numbers, Which Pirani Mistakenly Interprets as Nefarious**

CareOregon is responsible for ensuring health care services and programs are delivered on an equitable basis to Oregon's Medicaid recipients.  One critical component in meeting the organization's mandate is ensuring that funding is best allocated across the organization's various departments.  Hunter Decl. ¶ 2.  It is critical that CareOregon aligns its spending in a manner that best serves its constituent populations.  *Id.* Eric Hunter, the CEO for CareOregon, is constantly analyzing and tinkering with budgets, service operations, and corollary staffing decisions.  *Id.*

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

In or around July 2023, Hunter met with Dr. Mason for a standard monthly meeting. Mason Decl. ¶ 3. During that meeting, Hunter questioned Dr. Mason about the scope and nature of Pirani's role. *Id.* At that time, Pirani split Pirani's work time between Tribal, NEMT, and EDI, all while holding the title "VP of Strategic Business Initiatives." Hunter Decl. ¶ 4.

In response, on July 26, 2023, Dr. Mason emailed Pirani and inquired about "the percentages of time you spend on various activities, and the same for [two subordinates of Pirani]. . . . Want to see how we are performing going into budget season." Pirani Dep. at 74:19-20, Ex. 10. Plaintiff was "upset" about Dr. Mason's email. *Id.* at 76:18. Pirani felt the email was "the beginning of a process to get rid of me." *Id.* at 77:22-23. Dr. Mason's goal was to build a record *in support* of Pirani's efforts, thereby allowing Hunter to focus his analysis and personnel tinkering on different areas in the organization. Mason Decl. ¶ 3.

On August 2, 2023, Pirani responded to Dr. Mason's inquiry and reported that "my time is spent approximately: general administration – 35%, EDI – 38%, Tribal – 13%, SBP – 13%." Pirani Dep. at 74:19-20, Ex. 10. Pirani's own allocations reflect that, in a 40-hour workweek, Pirani devoted approximately 5.2 hours to Tribal and Strategic Business Partnerships; 15.2 hours to EDI; and 14 hours to "general administration."

**D. CareOregon Investigates and Remedies Plaintiff's Complaint**

In further response to Dr. Mason's budget email, on August 15, 2023, Pirani submitted a twenty-page letter to CareOregon's director of human resources, Meridith Green ("Green"). Pirani Dep. at 83:4-6, Ex. 11. Pirani's letter details the perceived deterioration of Pirani's relationship with Dr. Mason. Pirani's letter generally accused Dr. Mason of being "incapable or unwilling to support the needs of the business unit." *Id.* Pirani's letter also accused Dr. Mason of "foster[ing]

Page 6 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

a toxic team using various strategies including power hoarding, lack of empowerment, control, poor communication, triangulation, isolation, intimidation/harassment, manipulation, divisive tactics." *Id.* Pirani's letter proposed various outcomes, including: "[I[mmediate transition of [Pirani and Pirani's work] to the CCO Division" and assurances by CareOregon that the organization would commit to supporting NEMT and Tribal. *Id.*; Pirani Dep. at 99:4-20.

In response to Pirani's complaint, CareOregon did two things. First, Green engaged an outside consulting firm to assess the validity of Pirani's complaints regarding Dr. Mason. Green Decl. ¶ 4. Green did not understand Pirani's letter to concern violations of CareOregon's EEO policies, but rather Pirani's main concern that Dr. Mason was ineffective as a chief. *Id.* Critically, Green did not provide a copy of Pirani's complaint to Hunter. Green only informed Hunter about the general nature of Pirani's complaint and obtained Hunter's approval to engage the outside consultant. *Id.* ¶ 5; Hunter Decl. ¶ 5. Second, on or about August 23, 2023, Hunter met with Pirani and informed Pirani that Pirani and Pirani's teams would transition to reporting to a different supervisor. Hunter Decl. ¶ 5; Pirani Dep. at 105:8-13.

Separately, Hunter advised Leibowitz that she would assume supervision of Tribal, NEMT, and oversee Pirani and the five team members reporting directly to Pirani. Hunter Decl. ¶ 6; Declaration of Nora Leibowitz ("Leibowitz Decl.") ¶ 2. At that time, Leibowitz served as CareOregon's Chief Strategy Officer. Effective January 1, 2024, Leibowitz transitioned to Chief Medicaid Programs Officer. Leibowitz Decl. ¶ 2.

### E.  Plaintiff's New Supervisor Determines Plaintiff's Role Should be Eliminated

In anticipation of assuming supervision over the components of Pirani's scope of work (Tribal, NEMT, and SBI), Leibowitz reviewed and assessed the separate components and

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

concluded 1) there was not much work happening with SBI and SBI did not exist as a stand-alone scope of work; 2) it was logical to transition Tribal to Leibowitz's new Medicaid Programs division, as Tribal involved a Medicaid program; 3) NEMT did not belong under the Medicaid Programs division and was better organized within CareOregon's Operations division, which focuses on the delivery of non-medical benefits; 4) Leibowitz did not require a Vice President to manage Tribal staff, as there was already a Director-level individual (Troy Montserrat-Gonzales) managing daily operations; and 5) it was illogical and inefficient to have a vice president straddling two different departments. Leibowitz Decl. ¶¶ 3-7. Further, Dr. Mason already had assumed direct supervision for EDI staff. Pirani Dep. at 74:19-20, Ex. 10. No later than November 8, 2023, Leibowitz presented her recommendations to Hunter, including the recommendation to eliminate Pirani's position. Hunter concurred with Leibowitz's plan. Leibowitz Decl. ¶¶ 4-7 & Ex. A; Hunter Decl. ¶ 6. Leibowitz informed Green about the plan. Leibowitz Decl. ¶ 6, Ex. A.

On November 14, 2023, Green advised Pirani that Pirani's position was being eliminated, effective December 31, 2023. Green Decl. ¶ 6; Pirani Dep. at 111:23-24. Notably, Leibowitz had no knowledge that Pirani previously complained about Dr. Mason. Leibowitz Decl. ¶ 8. Nor did she have any information that Pirani had, the same day, applied for family medical leave. *Id.* ¶ 9.

### F. Plaintiff Applies for Family Medical Leave

On November 14, 2023, Plaintiff applied for family medical leave. Compl. ¶ 29. Plaintiff's application was submitted directly to CareOregon's third-party benefits administrator. Plaintiff did not notify CareOregon personnel that Plaintiff intended to take family medical leave. Pirani Dep. at 115:2-7. Leibowitz was unaware of Plaintiff's FML application. Leibowitz Decl. ¶ 9.

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

Plaintiff admits that Pirani doesn't believe Pirani's job was eliminated in response to Pirani's FML request; Pirani testified as follows:

"Q: Do you believe that you were laid off because you attended this doctor's visit?

"A: No.

"Q: Do you believe that you were laid off because your doctor may or may not have approved some time off?

"A: No."

Pirani Dep. at 115:8-13.

### G. Plaintiff Asserts New Allegations After Filing a Lawsuit

In Pirani's deposition, Plaintiff was asked to identify any and all facts that support Pirani's claim that Dr. Mason "harassed" Pirani or created a "hostile work environment" on the basis of Pirani's race, ethnicity, color, sex, gender, or sexual orientation. Plaintiff identified the following, which Pirani acknowledges Pirani never brought to CareOregon's attention during the course of Pirani's employment, at least prior to Pirani's twenty-page HR letter:

- "Every now and then," which Plaintiff estimated to be "a couple times a month maybe," Dr. Mason engaged in "microaggressions." Pirani Dep. at 56:17-57:11. As an example of a microaggression, Plaintiff asserts that "a couple times," "in passing," Dr. Mason asked: "how's that working for you?" in relation to Pirani's stated preference to not use *any* form of pronoun. Pirani Dep. at 58:22-59:5; 59:13-60:5; 60:13-62:5. Pirani does not recall any other forms of "microaggressions." *Id.* at 87:12-88:1.

- In one instance, Pirani met with Dr. Mason about a "barrier" Pirani had with another CareOregon employee. Dr. Mason told Pirani, "if you're not getting what you need, tell them they're going to have to deal with me. And they won't want to deal with me because they'll be scared to deal with me." Pirani Dep. at 62:25-63:9.

Apart from the above examples, Plaintiff speculates that Dr. Mason "doesn't respect women," Pirani Dep. at 97:1, but was unable to identify any discriminatory statements by Dr.

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

Mason over the course of their almost three-year working relationship.  Plaintiff asserts that Plaintiff's gender and sexual orientation were "the main focus of his discomfort with me," *id.* at 87:12-14, but Plaintiff admits that Dr. Mason never *said* anything discriminatory.  *Id.* at 87:15-17; 87:21-88:1.  Nor did Dr. Mason ever discipline Plaintiff in any manner.  *Id.* at 65.  Dr. Mason was not involved in the decision to transfer Plaintiff to Leibowitz's team.  Mason Decl. ¶ 4.  Nor was Dr. Mason involved in the decision to eliminate Plaintiff's position.  *Id.* ¶ 5.

### III.    LEGAL ARGUMENT

#### A.  Legal Standard For Summary Judgment

Summary judgment is not a disfavored procedural shortcut; rather, where appropriate, it furthers the just and speedy determination of an action.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is appropriate where the moving party shows that no genuine issue exists as to any material facts.  *Deveraux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).  A defendant need not negate a plaintiff's claims, but only establish a lack of evidence to support them.  *Celotex*, 477 U.S. at 322; *Deveraux*, 263 F.3d at 1076 (citing *Fairbanks v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000)).  Once a defendant satisfies its burden, a plaintiff may not rest on mere allegations or denials but must present evidence showing a triable issue of fact. *Id.*  To sustain his burden, Plaintiff must adduce relevant, admissible evidentiary matters setting forth specific facts based on personal knowledge.  Fed. R. Civ. P. 56(e).  When, as here, Plaintiff cannot meet this burden, summary judgment must be granted.

#### B.  Plaintiff's Discrimination Claims Fail as a Matter of Law

Plaintiff's first and second claims for relief assert that CareOregon discriminated against Plaintiff based on protected traits (race, ethnicity, color, sex, gender, sexual orientation, "and/or a

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

combination of these factors"). Compl. ¶¶ 11, 33, 40. Plaintiff asserts the alleged discrimination included "micromanaging Plaintiff, subjecting Plaintiff to differential treatment, changing Plaintiff's job duties, subjecting Plaintiff to a hostile work environment, and/or terminating their employment." *Id.* ¶ 33, 40.[2]

To prove Plaintiff's claim, Plaintiff must first establish "(1) the plaintiff belongs to a protected class, (2) [she] was performing according to [her] employer's legitimate expectations, (3) [she] suffered an adverse employment action, and (4) similarly situated employees were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 691 (9th Cir. 2017). When the plaintiff demonstrates a prima facie case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the defendant meets this burden, then the plaintiff must then raise a triable issue of material fact as to whether the defendant's proffered reasons are "mere pretext for unlawful discrimination." *Id.* Plaintiff's evidence must be "clear and substantial" in order to survive summary judgment. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029 (9th Cir. 2006).

### 1. Plaintiff Cannot Meet Plaintiff's Prima Facie Showing

As a threshold matter, Plaintiff's discrimination claim fails for the reason that certain alleged conduct does not rise to the level of an adverse employment action.[3] An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to

---

[2]    Plaintiff's harassment claim is discussed separately in Section III.C, *supra*.

[3]    When analyzing Section 1981 claims, courts apply the same legal principles as those applicable in a Title VII disparate treatment case. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

Jackson Lewis P.C.
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hess v. Multnomah Cty.*, 216 F. Supp. 2d 1140, 1154 (D. Or. 2001).

Plaintiff alleges, in part, that Dr. Mason "micromanaged" her. Compl. ¶¶ 33, 40. However, allegations that a manager micromanaged and "excessively monitored" an employee "do not rise to the level of injury or harm sufficient to qualify as adverse employment actions." *Erickson v. Daimler Trucks N. Am., LLC*, 2011 U.S. Dist. LEXIS 119862, at *52 (D. Or. July 20, 2011). *See also MacEntee v. IBM*, 471 F. App'x 49, 50 (2d Cir. 2012) (holding that "close supervision of her time entries and workplace conduct are not cognizable 'adverse employment actions.'").

Similarly, Plaintiff alleges that CareOregon subjected Plaintiff to "differential treatment." Compl. ¶¶ 33, 40. Differential treatment, however, without a concomitant change in employment status, is not actionable discrimination. "Petty slights, minor annoyances, and simple lack of good manners" do not violate Title VII's discrimination prohibitions. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Plaintiff's suggestion that Plaintiff was treated "differently," without a corresponding employment action, fails to state a claim for relief.

Further, while Plaintiff asserts that CareOregon "changed Pirani's job duties," Compl. ¶¶ 33, 40, Pirani's allegations do not support an actionable discrimination claim. *Toy v. City & County of San Francisco*, 2000 U.S. App. LEXIS 11678, at *3-4 (9th Cir. 2000) (holding that transfer which did not reduce the plaintiff's salary, rank, or work hours not an adverse employment action); *Yates v. AVCO Corp.*, 819 F.2d 630, 638 (6th Cir. 1987) (no adverse employment action where transfer did not result in loss of salary or benefits).

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

### 2. Plaintiff Cannot Satisfy Plaintiff's Resulting Burden

Ultimately, Plaintiff's discrimination claims are premised on CareOregon's decision to eliminate Pirani's position. While the decision to eliminate Plaintiff's role certainly amounts to an adverse action, CareOregon has no difficulty articulating the legitimate business reasons for the challenged decision. As explained above, following Plaintiff's reassignment (at Plaintiff's request) to Leibowitz's department, Leibowitz reviewed Plaintiff's role within the organization, determined that Plaintiff's work on behalf of Tribal Affairs should transfer to the Medicaid Programs division because CareOregon's work with Tribal Affairs involved Medicaid eligible individuals, determined that Plaintiff's work on behalf of NEMT did not belong under the Medicaid Programs division and should be aligned with CareOregon's Operations division, and that Plaintiff's role should be dissolved as unneeded.[4] *Accord Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (explaining that an employer meets its burden of production if it "simply explains what [it] has done or produces evidence of legitimate nondiscriminatory reasons.").

Under the final step of the *McDonnell Douglas* burden-shifting analysis, a plaintiff is given an opportunity to demonstrate that the employer's proffered reason is pretextual. *See id.* Plaintiff must rebut Defendant's reason for Plaintiff's termination by producing "specific, substantial evidence of pretext." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221-22 (9th Cir. 1998); *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996). A plaintiff is entitled to a trial on the merits only if she presents specific and substantial evidence that the employer's

---

[4] While Leibowitz was not informed about Plaintiff's August 2, 2023, response to Dr. Mason, wherein Plaintiff reported that Plaintiff's substantive work was, essentially, half time, Leibowitz's overall assessment aligns with Plaintiff's own admissions that Plaintiff's contributions to CareOregon did not justify Plaintiff's VP-level salary.

Page 13 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

proffered motives were not the actual motives because they are inconsistent or otherwise not believable. *Godwin*, 150 F.3d at 1221. Merely denying the credibility of the employer's proffered reasons is insufficient. *Lindsey v. Shalmy*, 29 F.3d 1382, 1385 (9th Cir. 1994). Similarly, speculation and unfounded accusations are insufficient to create a triable issue. *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001). Here, Plaintiff cannot demonstrate that CareOregon's proffered reasons for Plaintiff's termination are unbelievable or unworthy of credence. In short, no reasonable jury could conclude that CareOregon discriminated against Plaintiff when it elected to eliminate Plaintiff's position.

### C. Plaintiff's Harassment Claim Fails as a Matter of Law

In conjunction with Plaintiff's discrimination claims, Plaintiff alleges that CareOregon subjected Plaintiff to a hostile work environment. Compl. ¶¶ 33, 40. Plaintiff also asserts stand-alone claims for hostile work environment. *Id.* ¶¶ 47, 50. Regardless of how Plaintiff elects to plead Plaintiff's claim, the claim fails for lack of proof.

To prove Plaintiff's claim, Plaintiff must show Plaintiff was subjected to "harassing behavior sufficiently severe or pervasive to alter the conditions of [Pirani's] employment." *Steele v. Mayoral*, 231 Or. App. 603, 605, 220 P.3d 761, 763 (2009). Neither Title VII nor its state law equivalent is a "general civility code." *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998).[5] A violation is not established merely by evidence showing "sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id. See, e.g., Jordan v. Clark*, 847 F.2d 1368, 1375 (9th Cir. 1988) (men and women telling "off-color" jokes at work did not create an abusive

---

[5]     For Plaintiff's state law claims under ORS 659A.030, federal decisions under Title VII generally are considered instructive. *See Harris v. Pameco Corp.*, 170 Or. App. 164, 176, 12 P.3d 524 (2000).

Page 14 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

environment).  Offensive conduct must be "severe" or "pervasive" and create an "abusive working environment" before it will be found to affect adversely the terms or conditions of employment. *Harris v. Forklift Systs., Inc.*, 510 U.S. 17, 21 (1993); OAR 839-005-0030(1)(b).

Here, Plaintiff alleges that CareOregon created or allowed a hostile work environment because (i) Dr. Mason twice asked Plaintiff "how's that going for you," regarding Plaintiff's stated preference to use no pronouns, and (ii) Dr. Mason once suggested to Plaintiff that if colleagues presented barriers, Plaintiff should threaten to make them deal with him.  Plaintiff's allegations, separately or in combination, fail as a matter of law to rise to the level of actionable harassment. *Compare Vasquez v. County of Los Angeles*, 349 F.3d 634, 643 (9th Cir. 2003) (holding two offensive statements made more than six months apart and yelling at the plaintiff twice not sufficiently severe or pervasive).

Finally, the undisputed evidence is that, once Plaintiff alerted CareOregon HR to Plaintiff's concerns with Dr. Mason, management intervened and initiated plans to transfer Plaintiff off Dr. Mason's team.   An employer is only liable for the harassment of managers if, in the absence of a tangible employment action, it knew about the harassment and failed to take prompt and effective remedial steps.  *Vance v. Ball*, 570 U.S. 421, 430 (2012); OAR 839-005-0010(4)(e).   The undisputed evidence does not allow for a conclusion that CareOregon is strictly liable for Dr. Mason's alleged actions because CareOregon exercised reasonable are under the circumstances.

## D. Plaintiff's Retaliation Claims Fail as a Matter of Law

Finally, Plaintiff asserts that CareOregon eliminated Plaintiff's position because Plaintiff "reported and/or opposed unlawful employment practices," Compl. ¶¶ 53, 56, because Plaintiff reported "evidence of violations of federal and/or state laws," *id*. ¶ 59, or because Plaintiff used

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

family medical leave. *Id.* ¶ 65. To establish actionable retaliation, Plaintiff necessarily must show Plaintiff engaged in protected activity, Plaintiff was subjected to an adverse employment action, and evidence of a causal link exists between the two. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). Based on the undisputed facts, Plaintiff's retaliation claim fails at a prima facie level because Plaintiff cannot meet Plaintiff's burden of establishing Plaintiff engaged in protected activity. Nor can Plaintiff offer evidence establishing the requisite causal link. Finally, even if Plaintiff could prove up Plaintiff's prima facie case, Plaintiff's retaliation claim fails for lack of evidence suggesting pretext. *See Thomas v. Lake Cty.*, 2014 U.S. Dist. LEXIS 180155, at *22 (D. Or. 2014).

### 1. Plaintiff Did Not Engage in Protected Activity

Plaintiff's retaliation claim hinges in significant part on Plaintiff's assertion that Plaintiff's August 15, 2023, written complaint to Green amounts to protected conduct. Plaintiff's HR complaint, however, cannot reasonably be understood as a complaint concerning discrimination. Plaintiff's primary contention related to Pirani's accusation that Dr. Mason was "incapable or unwilling to support the needs of the business unit." Pirani's letter also lamented the breakdown in their personal relationship. Pirani accused Dr. Mason of using "strategies" that Pirani found objectionable, but Pirani does not accuse Dr. Mason of discrimination against Pirani. Plaintiff's stated concern was not discrimination, but rather the impact Pirani perceived on Tribal and NEMT resulting from Dr. Mason's inability to effectively advocate for those programs.

Green did not perceive Pirani's letter to concern violations of CareOregon's EEO policies. Green Decl. ¶ 4. Pirani's letter is akin to the employee complaint discussed in *Jamal v. Wilshire Mgmt. Leasing Corp.*, 320 F. Supp. 2d 1060 (D. Or. 2004). In *Jamal*, the employee complained

Page 16 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 ǀ (503) 229-0405
(fax)

that her supervisor was a "bad manager" because the manager, allegedly, threatened to fire employees; favored certain employees over others; and displayed a lack of respect towards the plaintiff, among other concerns  *Id.* at 1064.  This Court held the plaintiff's subsequent termination was not retaliatory, as a matter of law, because the plaintiff's underlying complaint was not a protected activity.  *Id.* at 1079.  *See also See Silver v. KCA, Inc.*, 586 F.2d 138, 142 (9th Cir. 1978) ("[A] case of retaliation has not been made out unless the 'retaliation' relates to the employee's opposition to [discrimination].")  Plaintiff's retaliation claims, like those discussed in *Jamal*, fail at the prima facie level.

### 2.  CareOregon's Decisionmakers Lacked the Requisite Knowledge

It is axiomatic that an employer cannot retaliate against an employee unless the decisionmaker at issue is aware of the employee's protected conduct.  Essential to showing a causal link between protected conduct and a subsequent adverse employment action is "evidence that the employer was aware that the plaintiff had engaged in the protected activity."  *Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 796 (9th Cir. 1982), (citing *Gunther v. Washington Co.*, 623 F.2d 1303, 1316 (9th Cir. 1979), *aff'd*, 452 U.S. 161 (1981)).  In *Cohen*, the vice president of the defendant company learned that a female employee had filed a complaint with the EEOC alleging sexual discrimination by the company.  Later, the employee's supervisor implemented a new scheduling policy which resulted in unfavorable changes to the employee's work schedule.  The employee sued for retaliation.  The court found, however, that the employee's supervisor was unaware of the EEOC complaint and the vice president had not informed the supervisor about the complaint.  As such, the plaintiff could not establish a causal connection between her protected activity and the challenged employment action.  It did not matter, the court found, that the vice president had

Page 17 – DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

knowledge of the complaints because he had not shared the information with the plaintiff's supervisor. *Id.* at 1316. Simply stated, "for a plaintiff to establish a causal connection between the protected activity and the adverse employment action, he must prove that the person taking the adverse employment action knew about the plaintiff's protected activity at the time he made the adverse decision." *Kitchen v. WSCO Petroleum Corp.*, 481 F. Supp. 2d 1136, 1148 (D. Or. 2007). *See also Brown v. City of Franklin*, 430 Fed. Appx. 382, 386 (6th Cir. 2011) (summary judgment appropriate because plaintiff "conceded that he has no evidence to undermine [defendant's] claim of ignorance.").

Manifestly, Plaintiff has no competent evidence linking Pirani's alleged protected activity (even if the conduct is deemed protected) and Plaintiff's job elimination. Construing the facts in a light most favorable to Plaintiff, Pirani reported concerns regarding Dr. Mason to Green, and Green relayed vague concerns to Hunter. However, Hunter, and, more importantly, Leibowitz deny any knowledge about the substance of Plaintiff's HR report. Hunter Decl. ¶ 5; Leibowitz Decl. ¶ 8. Dispositively, Leibowitz could not have recommended the elimination of Pirani's job because of the HR complaint because she was never advised of any complaint. Similarly, while Hunter's role was limited to approving Leibowitz's recommendation, there is no evidence that he could have acted with a retaliatory motive because Hunter had no knowledge that the HR complaint involved anything more than assertions by Pirani that Dr. Mason was a poor manager.

In short, there is no evidence that CareOregon's decision to eliminate Pirani's job and realign departments for organizational efficiencies was influenced in any way by Plaintiff's earlier report to Green.

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

**3. Plaintiff Cannot Meet Plaintiff's Resultant Burden**

Even if Plaintiff could meet Plaintiff's prima facie burden, the undisputed evidence fails to allow any reasonable inference that CareOregon's stated reason for eliminating Plaintiff's position is somehow unbelievable or unworthy of credence. While Plaintiff may not agree with the challenged decision, the evidence does not permit a reasonable inference that CareOregon's decision was retaliatory. Because there are no material questions of fact for trial, summary judgment is appropriate.

## CONCLUSION

Based on the foregoing, Defendant requests this Court grant Defendant's motion for summary judgment in its entirety and enter an order dismissing this case.

DATED: December 5, 2025.

Respectfully Submitted,
JACKSON LEWIS P.C.


By:    *s/ Mark Crabtree*
    Mark Crabtree, OSB #015070
    mark.crabtree@jacksonlewis.com
    Leslie Boro, OSB #173662
    leslie.boro@jacksonlewis.com
    Attorneys for Defendant

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)

**DECLARATION OF SERVICE**

I hereby certify that I served the foregoing **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** via:

☐  Electronic Mail

☐  US Postal Service

■  CM/ECF

☐  Facsimile Service

☐  Hand Delivery

☐  UPS

as follows on the date stated below:

Aaron W. Baker, OSB No. 922220
Serena L. Liss, OSB No. 154799
Baker & Liss PC
1000 SW Broadway, Suite 2300
Portland, OR 97205
aaron@awbakerlaw.com
serena@awbakerlaw.com
    *Attorneys for Plaintiff*

Cc:    Sarah Kelly
       admin@awbakerlaw.com

DATED this 5th day of December, 2025.

By:    *s/ Delores Petrich*
       Delores Petrich

4922-6273-1647, v. 1

Page 20 – DECLARATION OF SERVICE

**Jackson Lewis P.C.**
200 SW Market St. Ste. 540
Portland OR 97201
(503) 229-0404 | (503) 229-0405
(fax)